[Cite as *In re R.K.*, 2021-Ohio-3074.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | CASE NOS. CA2021-03-027<br>CA2021-03-028 |
| R.K., et al. | : | <u>O P I N I O N</u><br>9/7/2021 |
|  | : |  |
|  | : |  |
|  | : |  |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 19-D000044

Andrew J. Brenner, for appellant.

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

**M. POWELL, P.J.**

{¶ 1} Appellant, the biological mother of Ra.K. and Re.K. ("Mother"), appeals from a decision of the Warren County Court of Common Pleas, Juvenile Division, granting permanent custody of her children to appellee, Warren County Children Services ("WCCS"). For the reasons outlined below, we affirm the juvenile court's decision.

{¶ 2} On June 3, 2019, WCCS filed a complaint and requested temporary custody

of Ra.K. and Re.K. alleging they were abused, neglected, and dependent children. At the time, Ra.K. was nearly seven years old and Re.K. was four years old. The complaint alleged that both parents were in police custody following a domestic disturbance while at the Mason Inn.[1] A WCCS caseworker described the altercation as "significant" and noted that Re.K. had blood on his stomach from injuries sustained by Mother. Ra.K. explained to the WCCS caseworker that when her father ("Father") drinks, he gets angry and hits people.

{¶ 3} The complaint also alleged that Mother permitted the children to associate with a sex offender and had even left the children in his care. When asked about alternative placements for the children, Father provided the names of two relatives, but refused to provide any additional information. Following this incident, the juvenile court conducted a shelter care hearing and ordered the children placed into the emergency shelter care of WCCS. The juvenile court subsequently adjudicated the children dependent and neglected.

{¶ 4} While in the temporary custody of WCCS, the agency discovered that the children had pronounced physical, mental, and developmental issues. Both children had speech and language delays, mental health issues, rotting teeth, and developmental and cognitive delays. The children also had problems eating and sleeping, persistent constipation, and were unable to brush their teeth, dress themselves, or brush their own hair. Ra.K. was not enrolled at school even though she was nearly seven years old. Re.K. still thought he was a baby, could not feed himself, and expected to drink from a bottle. Re.K. also reportedly had no concept of books. According to the foster mother, Re.K. would "hold [books] upside down * * * like he didn't even know what to do with them."

{¶ 5} The children's foster family made appointments for the children concerning these issues. At the time of the permanent custody hearing, Ra.K. was receiving

---

1. The record indicates Mother was taken into custody because she assaulted the responding police officers.

- 2 -

occupational therapy, counseling services, seeing a gastroenterologist, and had recently graduated from speech therapy. Re.K. was receiving speech therapy, occupational therapy, and behavioral therapy. Re.K. was also under the care of a feeding team in the gastroenterology unit at Children's Hospital. The children were on multiple medications, some of which had to be strictly administered at certain times of the day.

{¶ 6} On December 4, 2020, WCCS moved for permanent custody of the children. On March 4, 2021, Mother moved for legal custody. The juvenile court held a hearing on both motions on March 8, 2021.

{¶ 7} During its case-in-chief, the state presented evidence from the children's speech therapist, Ra.K.'s mental health therapist, the foster mother, the occupational therapist, and two caseworkers with WCCS. The testimony revealed that the children have numerous physical, mental, and emotional needs that require intervention from multiple specialists. Mother was initially resistant to any intervention, fearing that the children would be "labeled." The record revealed that the foster family was instrumental in helping the children achieve progress during the pendency of this case.

{¶ 8} The state presented evidence that Mother made progress in her case plan but did not participate in many of the medical appointments and failed to inquire about the various therapies and interventions that were deemed necessary to the children's health and well-being. When Mother did attend, she undermined the professionals' efforts and disrupted several appointments with unruly outbursts. Mother began showing more interest in the children's care after learning that the state was going to seek permanent custody, but she soon began missing appointments again and failed to maintain consistent contact with the agency.

{¶ 9} Following the state's case-in-chief, Mother testified on her own behalf. Mother

admitted that she did not believe the children needed the treatment they were receiving in foster care but stated that she now understands and is thankful for the progress they have made. Mother asserted that she would continue the children's treatment. However, Mother had little practical understanding of the treatments or medications the children were receiving and was unfamiliar with the programs in which the children were enrolled.

{¶ 10} Mother called Francesca Moses, her cousin and roommate, to testify. Moses testified that she was interested in becoming the children's custodian. However, Moses admitted that she did not contact the agency until Friday March 5, 2021, three days prior to the permanent custody hearing, and professed ignorance of the many appointments the children have on a weekly basis. When asked why she did not return the multiple phone calls and messages from the agency, Moses stated that she is "one of those people that if I don't recognize the phone number, I won't answer. And, uh, I won't * * * listen to the voicemail either."

{¶ 11} After taking the matter under advisement, the juvenile court granted WCCS's motion for permanent custody and denied Mother's motion for legal custody. In so doing, the juvenile court determined that Ra.K. and Re.K. had been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period. The juvenile court also determined that WCCS had proved by clear and convincing evidence that a grant of permanent custody was in the children's best interests. Mother now appeals from the juvenile court's decision, raising a single assignment of error for review:

{¶ 12} THE FINDING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} In her sole assignment of error, Mother argues the juvenile court's decision to grant permanent custody was against the manifest weight of the evidence.

{¶ 14} Before a natural parent's constitutionally protected liberty interest in the care and custody of his or her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *In re K.W.*, 12th Dist. Butler No. CA2015-06-124, 2015-Ohio-4315, ¶ 11, citing *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. This court will therefore reverse a juvenile court's decision to grant permanent custody only if there is a sufficient conflict in the evidence presented. *In re K.A.*, 12th Dist. Butler No. CA2016-07-140, 2016-Ohio-7911, ¶ 10. However, even if the juvenile court's decision is supported by sufficient evidence, "an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *In re T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 19.

{¶ 15} In determining whether a juvenile court's decision is against the manifest weight of the evidence in a permanent custody case, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *Id.*, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. The presumption in weighing the evidence is in favor of the finder of fact, which we are especially mindful of in custody cases. *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231 and CA2014-11-236 thru CA2014-11-238, 2015-Ohio-1343, ¶ 25. Therefore, "[i]f the evidence is susceptible to more than one construction, the reviewing court is bound to

give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Eastley* at ¶ 21.

{¶ 16} Pursuant to R.C. 2151.414(B)(1), the juvenile court may terminate parental rights and award permanent custody of a child to a children services agency if the court makes findings pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. First, the juvenile court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Second, pursuant to R.C. 2151.414(B)(1)(a) to (e), the juvenile court must find that any of the following apply: (1) the child is abandoned; (2) the child is orphaned; (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. Only one of these findings must be met to satisfy the second prong of the two-part permanent custody test. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 17} In this case, the juvenile court found Ra.K. and Re.K. had been in the temporary custody of WCCS for more than 12 months of a consecutive 22-month period at the time WCCS filed its motion for permanent custody. This finding is not disputed by Mother and is supported by the record, as the children have been in the temporary custody

- 6 -

of the agency since June 2019.[2]  Mother instead disputes the juvenile court's decision finding that permanent custody of the children to the agency was in Ra.K.'s and Re.K.'s best interests.  We find no merit to Mother's claims.

{¶ 18}  When considering the best interest of a child in a permanent custody hearing, the juvenile court is required under R.C. 2151.414(D)(1) to consider all relevant factors. This includes, but is not limited to, (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-town providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors listed in R.C. 2151.414(E)(7) to (11) apply in relation to the parents and child.

{¶ 19}  Initially, with respect to the children's relevant interactions and relationships with those who may significantly impact their young lives, the juvenile court found that the children have thrived in their placement with the foster family and are in "the perfect place for a possible adoption."  The juvenile court discussed the bond the children have with their foster family and that they were "leaps and bounds" better than they were when the agency first became involved in the case.  The juvenile court also found that the children's only chance of stability is to be placed in the permanent custody of WCCS so that they can be adopted.

{¶ 20}  In its consideration of R.C. 2151.414(D)(1)(b), the juvenile court stated that

---

2. The juvenile court also found that the children could not be placed with either parent within a reasonable time, which Mother disputes.  We need not address this issue because the children have been in the custody of WCCS for more than 12 months of a consecutive 22-month period thereby establishing the second prong of the permanent custody analysis.

- 7 -

Re.K. is too young to express his wishes. Ra.K.'s attorney stated that she would be happy living with either her mother or her foster family. The CASA recommended that permanent custody be granted in favor of WCCS.

{¶ 21} With respect to R.C. 2151.414(D)(1)(c), the juvenile court reviewed the children's custodial history and found that they had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period.

{¶ 22} In considering R.C. 2151.414(D)(1)(d), the juvenile court found that the children needed a legally secure placement, that the agency can provide the necessary legally secure placement, and that such placement is the only way their needs can be achieved. The juvenile court also noted that Father is out of the country and has not participated in these proceedings. The juvenile court further found that Mother was either in "denial or just clueless" as to the magnitude of the children's physical and mental health issues. The juvenile court additionally found that, even after the agency got involved and found the children suitable care, Mother had little involvement with the children's treatment or care and, because of that, would have no idea how to continue treatment if the children were restored to her custody.

{¶ 23} In addition, the juvenile court found that Mother lacked the resources to get the children to their appointments, and then do the necessary work at home that is required to build upon the children's therapy and interventions. The juvenile court determined that this would likely cause the children to lose the progress they had made during their current placement. The juvenile court concluded that Mother was not equipped to handle the children's extensive needs. Based on these findings, the juvenile court found by clear and convincing evidence that it was in Ra.K.'s and Re.K.'s best interest to grant permanent custody to WCCS.

{¶ 24} On appeal, Mother disputes the juvenile court's findings and argues that the evidence did not support the grant of permanent custody. Mother asserts that she made substantial progress in completing her case plan objectives, maintains a job, and has stable housing.[3] However, it is well-settled that the completion of case plan services alone does not equate to, or necessitate, a finding that the parents have substantially remedied the conditions that caused the removal of the child from the home. *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 24. Stated otherwise, a parent can successfully complete the requirements of a case plan, but not substantially remedy the conditions that caused the children to be removed, as the case plan is "simply a means to a goal, but not the goal itself." *In re E.B.*, 12th Dist. Warren Nos. CA2009-10-139 and CA2009-11-146, 2010-Ohio-1122, ¶ 30.

{¶ 25} We have carefully and thoroughly reviewed the evidence in this case and find that the juvenile court's determination regarding the best interests of Ra.K. and Re.K. is supported by clear and convincing evidence and is not against the manifest weight of the evidence. Though Mother is employed, has suitable housing, and has made progress in her case plan, the record reflects that she cannot provide the continued care and attention the children need. It is also clear from the testimony that the children had significant issues that had gone untreated while in Mother's care. Instead of addressing the children's delays, Mother ignored them and was resistant to the services that her children were receiving.

{¶ 26} While foster mother engaged with the service providers to better understand and learn how to implement the children's interventions at home, Mother rarely attended the children's appointments. Throughout these proceedings, WCCS explored possible

---

3. We note, however, that Mother was not in full compliance with her case plan requirements. Mother tested positive for marijuana multiple times and refused to submit to drug screens, most recently in January 2021.

placements for the children, but was unable to locate a suitable alternative arrangement. Mother suggested Francesca Moses, who belatedly offered to serve as an alternative custodian for the children. However, Moses has had minimal interaction with the children, and has no appreciation of the burdens associated with caring for these special-needs children. The juvenile court justifiably rejected Moses as a viable alternative custodian. In contrast, the children have been living with their foster family since shortly after their removal from Mother's care and are bonded with their foster family. Foster mother clearly demonstrated that she could attend to the children's medical and mental health needs.

{¶ 27} Considering the foregoing, we find the juvenile court's decision was supported by clear and convincing evidence and was not against the manifest weight of the evidence. Therefore, the juvenile court did not err by granting permanent custody of Ra.K. and Re.K. to WCCS. Mother's sole assignment of error is overruled.

{¶ 28} Judgment affirmed.

HENDRICKSON and BYRNE, JJ., concur.