**[Cite as *In re K.P.*, 2022-Ohio-1155.]**

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

|                |   |                          |
|----------------|---|--------------------------|
| IN RE:         | : | CASE NO. CA2021-11-017   |
| K.P.           | : | O P I N I O N            |
|                |   | 4/5/2022                 |
|                | : |                          |
|                | : |                          |
|                | : |                          |

APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 20193047

Martin P. Votel, Preble County Prosecuting Attorney, and Sean Brinkman, Assistant Prosecuting Attorney, for appellee.

Alana Van Gundy, for appellant.

**M. POWELL, P.J.**

{¶ 1} Appellant ("Father") appeals a decision of the Preble County Court of Common Pleas, Juvenile Division, granting permanent custody of his son, K.P., to the Preble County Job and Family Services, Children's Services Division (the "Agency"). K.P.'s mother ("Mother") is not a party to this appeal. Father and Mother were never married to one another.

{¶ 2} The Agency became involved with Mother on June 28, 2019, the day K.P.

was born, when it received a referral that Mother reported she had used illegal substances two months prior to giving birth, on the day of the birth, and within a few days of the birth, and that K.P. was exhibiting withdrawal symptoms. Four days after K.P. was born, his cord blood tested positive for fentanyl, buprenorphine, morphine, naloxone, amphetamines, benzodiazepines, methamphetamines, and cocaine. At the time of K.P.'s birth, Father was incarcerated on drug charges and was set to be released in December 2021. On July 3, 2019, the Agency filed a complaint alleging that K.P. was a dependent and abused child. The juvenile court granted emergency temporary custody of the child to the Agency; the child was placed in foster care. On August 22, 2019, the juvenile court adjudicated K.P. a dependent and abused child.

{¶ 3} Father was added to the family case plan while he was incarcerated. The Agency requested that Father engage in substance abuse "services that assist him with becoming or remaining free of all illegal substance use. [Father] will sign releases for this agency to obtain information on his progress. [Father] will not use any illegal substances or legal substances in an illegal manner." Father was also required to "obtain a consistent income that will contribute to providing for [K.P.'s] basic needs." Father was released on June 24, 2021.

{¶ 4} Temporary custody of K.P. was extended on July 24, 2020, and again on February 17, 2021. On May 28, 2021, the Agency moved for permanent custody of K.P. Both Father and Mother objected to the Agency's request for permanent custody. The CASA filed a report, recommending that permanent custody be granted to the Agency. In support of her recommendation, the CASA noted that temporary custody of K.P. could no longer be extended, that Father had no relationship with K.P. because he had been incarcerated during the child's entire life, and that although Father was set to be released in June 2021, he could not provide basic needs for the child.

- 2 -

{¶ 5} A hearing on the Agency's motion for permanent custody was held in September 2021. Mother was represented by counsel; Father was not. The juvenile court heard testimony from several witnesses, including the foster father, a caseworker, and Mother. Father was given the opportunity to testify on his own behalf but declined to do so.

{¶ 6} During its case-in-chief, the Agency presented evidence that K.P. had been living with his current foster family since February 2020, that he is very bonded with the foster family and that his needs are met, and that the foster family would like to adopt him. The caseworker testified that Father had no relationship with K.P. while incarcerated, that following his release, Father regularly and consistently attended visits with K.P., and that the visits always went well. The caseworker further testified that Father was not currently employed, that he had provided a friend's address in Indiana for housing, and that while he reported he had completed the case plan services while he was incarcerated, the Agency had not received documentation showing what he had completed. The caseworker testified that Father's lack of stable housing and steady income and the failure to verify his sobriety prevented reunification of K.P. with Father.

{¶ 7} On October 21, 2021, the juvenile court granted permanent custody of K.P. to the Agency. The juvenile court found that it was in K.P.'s best interest to grant the Agency permanent custody, that K.P. had been in the temporary custody of the Agency for at least 12 months of a consecutive 22-month period, and that despite reasonable efforts by the Agency to prevent the need for placement of K.P. outside the home, K.P. could not and should not be placed with Father or Mother within a reasonable amount of time.

{¶ 8} Father now appeals the juvenile court's decision, raising one assignment of error:

{¶ 9} THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO PREBLE COUNTY CHILDREN'S SERVICES BECAUSE THAT AGENCY FAILED TO

PROVE BY CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE MINOR CHILD.

{¶ 10} Father argues that the juvenile court erred by granting permanent custody of K.P. to the Agency.

{¶ 11} Before a natural parent's constitutionally protected liberty interest in the care and custody of his or her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *In re R.K.*, 12th Dist. Warren Nos. CA2021-03-027 and CA2021-03-028, 2021-Ohio-3074, ¶ 14, citing *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). Because the state is required to prove that the statutory standards for permanent custody have been met by clear and convincing evidence, "[a]n appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination." *In re R.K.* at ¶ 13. This court will therefore reverse a juvenile court's decision to grant permanent custody only if there is a sufficient conflict in the evidence presented. *Id.* However, even if the juvenile court's decision is supported by sufficient evidence, an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence. *Id.*

{¶ 12} In determining whether a juvenile court's decision to grant a motion for permanent custody is against the manifest weight of the evidence, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *In re T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 19, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. "The presumption in weighing the evidence is in favor of the finder of fact, which we are

- 4 -

especially mindful of in custody cases." *In re R.K.* at ¶ 15.

{¶ 13} Pursuant to R.C. 2151.414(B)(1), the juvenile court may terminate parental rights and award permanent custody of a child to a children services agency if the court makes findings pursuant to a two-part test. *In re R.K.*, 2021-Ohio-3074 at ¶ 16. First, the juvenile court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *Id.* Second, pursuant to R.C. 2151.414(B)(1)(a) to (e), the juvenile court must find that any of the following apply: (1) the child is abandoned; (2) the child is orphaned; (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. *Id.* Only one of these findings must be met to satisfy the second prong of the two-part permanent custody test. *Id.*

{¶ 14} In this case, the juvenile court found that K.P. had been in the temporary custody of the Agency for more than 12 months of a consecutive 22-month period at the time the Agency filed its motion for permanent custody. This finding is not disputed by Father and is supported by the record, as K.P. has been in the temporary custody of the Agency since July 2019.[1] Father instead disputes the juvenile court's finding that granting permanent custody of K.P. to the Agency was in the child's best interests.

---

1. As noted above, the juvenile court also found that K.P. could not be placed with Father within a reasonable time because Father failed continuously and repeatedly to substantially remedy the conditions that caused the child to be removed, which Father disputes. We need not address this argument, however, because K.P. has been in the custody of the Agency for more than 12 months of a consecutive 22-month period, thereby establishing the second prong of the permanent custody analysis. *In re J.M.*, 12th Dist. Butler Nos. CA2021-06-072, CA2021-06-073, CA2021-07-083, and CA2021-07-084, 2021-Ohio-3961, ¶ 51, fn. 5.

{¶ 15} When considering the best interest of a child in a permanent custody hearing, the juvenile court is required under R.C. 2151.414(D)(1) to consider all relevant factors. This includes, but is not limited to, (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-town providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors listed in R.C. 2151.414(E)(7) to (11) apply in relation to the parents and child. *In re R.K.*, 2021-Ohio-3074 at ¶ 18.

{¶ 16} With respect to K.P.'s relevant interactions and relationships with those who may significantly impact his young life, the juvenile court found that K.P. was doing well in foster care and that all his needs were met in his foster home. Furthermore, K.P. is very bonded with his foster family who has expressed an interest in adopting him.

{¶ 17} The juvenile court noted at the outset that the child's wishes "as expressed by the child or through the Guardian Ad Litem" is a best interest factor which the juvenile court is to consider under R.C. 2151.414(D)(1)(b). The juvenile court did not discuss this factor with reference to R.C. 2151.414(D)(1)(b), likely because of the lack of focus and evidence upon the issue during the permanent custody hearing and K.P.'s young age.[2] *See In re M.G.*, 12th Dist. Warren No. CA2020-10-070, 2021-Ohio-1000; *In re S.M.*, 12th Dist. Warren Nos. CA2018-08-088 thru CA2018-08-091 and CA2018-08-095 thru CA2018-08-097, 2019-Ohio-198. However, in addition to acknowledging that the child's wishes are a best

---

2. "[W]e emphasize that the best practice is for the juvenile court to specifically address each factor" under R.C. 2151.414(D)(1). *In re A.M.*, Slip Opinion No. 2020-Ohio-5102, ¶ 32. "Discussion of the statutory best-interest factors in R.C. 2151.414(D)(1) facilitate[s] appellate review of permanent-custody judgments." *Id.*

interest factor to be considered, the juvenile court's findings of fact noted that K.P. was two years old and using "Toddler language" and that the CASA's report recommended that permanent custody be granted to the Agency. *In re M.G.*[3] The foregoing indicates a consideration of this factor by the juvenile court.

{¶ 18} With respect to R.C. 2151.414(D)(1)(c), the juvenile court reviewed K.P.'s custodial history and found that he had been in his current foster home "since February of 2020, twenty months of his twenty-eight months." K.P. has been in the temporary custody of the Agency for 12 or more months of a consecutive 22-month period.

{¶ 19} In considering R.C. 2151.414(D)(1)(d), the juvenile court found that K.P. needs stability and a legally secure permanent placement and that his need for such placement could not be obtained without a grant of permanent custody to the Agency. The juvenile court noted that while there was a chance Father and Mother will be successful in remedying their issues, K.P. "is stable, happy and provided for now and deserves to have that continue." The court further found that no other relatives could be considered as custodians for K.P.

{¶ 20} The juvenile court made no findings regarding whether any of the factors listed in R.C. 2151.414(E)(7) thru (11) apply in relation to the parents and child. However, none of the factors apply here and no party has argued otherwise. *In re A.M.*, Slip Opinion No. 2020-Ohio-5102, ¶ 36.

{¶ 21} Based upon its consideration of the relevant factors in R.C. 2151.414(D), the juvenile court found by clear and convincing evidence that it was in K.P.'s best interest to grant permanent custody to the Agency.

---

3. On September 8, 2021, the day after the permanent custody hearing, the juvenile court filed an entry ordering that the child remain in the temporary custody of the Agency. The court's entry states, "the Court noted that CASA filed a written report recommending permanent custody of the Agency and confirmed that recommendation remained the same after hearing the testimony.

{¶ 22} Father argues that the evidence does not support the grant of permanent custody to the Agency. Specifically, Father asserts that considering little evidence was presented against him and he was never questioned on the record regarding his housing, employment, and sobriety, the evidence does not meet the standard of clear and convincing evidence necessary to permanently terminate his parental rights.

{¶ 23} Father was incarcerated on drug charges when K.P. was born in July 2019 and had no contact or relationship with K.P. until Father was released in June 2021 when K.P. was two years old, three months prior to the permanent custody hearing. Although Father regularly visited with K.P. after his release and the visits went well, the limited three-month period was insufficient to establish a significant relationship with K.P. Although Father ostensibly engaged in substance abuse treatment during his incarceration, the Agency never received documentation or verification of what case plan services were completed. Likewise, there was no evidence or verification of Father's sobriety following his release. The three-month period between his release and the permanent custody hearing was insufficient to establish a stable period of sobriety. Furthermore, Father was not employed, did not have his own housing, and was living with a friend in Lafayette, Indiana.

{¶ 24} Father takes issue with the fact that "no testimony from Father was heard," that he was not asked about his sobriety, housing, education, or employment on the record, and that the juvenile court "did not ask him on record about his progress towards his case plan." However, Father declined to testify on his own behalf and contradict the evidence submitted by the Agency that he lacked stable housing and employment and that he failed to verify the services he had completed while incarcerated and his sobriety. By declining to testify, Father forewent the opportunity to present evidence in his favor.

{¶ 25} Throughout these proceedings, the Agency explored possible placements for

K.P., but was unable to locate a suitable alternative arrangement. In a separate case involving Mother, the juvenile court granted permanent custody of K.P. to the Agency, finding that K.P. could not be placed with Mother within a reasonable time because Mother failed continuously and repeatedly to substantially remedy the conditions that caused the child to be removed. Earlier in the proceedings, Mother suggested her then roommate but the two subsequently had a falling out and were no longer speaking. Mother also suggested a family friend; however, the family friend has never met K.P. and never moved for legal custody of K.P.

{¶ 26} As this court has previously recognized, "[a] child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security." *In re M.G.*, 2021-Ohio-1000 at ¶ 44. The juvenile court's decision to grant permanent custody to the Agency does that. K.P. was removed from Mother's care on July 3, 2019, when he was four days old, and has been in foster care ever since. At the time of the September 2021 permanent custody hearing, Mother had been unable to remedy the conditions that caused K.P.'s removal. Moreover, she was incarcerated on drug charges and was not set to be released until January 2022. K.P. has been in the Agency's custody for over two years and no longer qualifies for temporary custody under R.C. 22151.415(D); K.P. does not meet the requirements for a planned permanent living arrangement under R.C. 2151.353(A)(5); and prior to the permanent custody hearing, no relative or other interested person had filed a motion for legal custody of K.P. By contrast, K.P. has been living in his foster home since February 2020, is bonded with his foster parents, and is doing very well. K.P.'s foster parents have indicated their desire to adopt K.P. It is the best interest of the child, not a parent's preferred outcome, that is controlling. *In re K.M.*, 12th Dist. Butler No. CA2019-01-015, 2019-Ohio-1833, ¶ 67.

{¶ 27} In light of the foregoing, we find that the juvenile court's decision was

supported by clear and convincing evidence and was not against the manifest weight of the evidence. Therefore, the juvenile court did not err by granting permanent custody of K.P. to the Agency.

**{¶ 28}** Father's assignment of error is overruled.

**{¶ 29}** Judgment affirmed.

S. POWELL and HENDRICKSON, JJ., concur.