[Cite as *In re K.H.*, 2024-Ohio-2113.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| K.H. | : | CASE NO. CA2024-02-002 |
| | : | O P I N I O N<br>6/3/2024 |
| | : | |
| | : | |
| | : | |

APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 20213109

Martin P. Votel, Preble County Prosecuting Attorney, and Sean Brinkman, Assistant Prosecuting Attorney, for appellee.

Kirsten Knight, for appellant.

**BYRNE, P.J.**

{¶ 1} Appellant ("Mother"), the mother of minor child K.H. ("Kayla"), appeals the decision of the Preble County Court of Common Pleas, Juvenile Division, granting permanent custody of Kayla to the Preble County Department of Jobs and Family

Services ("the Agency").[1]  For the reasons outlined below, we affirm the juvenile court's decision.

## I. Factual and Procedural Background

{¶ 2}  Kayla was born prematurely on September 15, 2022 at Mercy Anderson Hospital in Cincinnati.  On September 16, 2022, the Agency received a referral and was informed that Kayla had been in the neonatal intensive care unit (NICU) since birth due to pre-natal drug exposure.  Kayla and Mother both tested positive for illegal drugs, and Mother admitted to using marijuana and methamphetamines in the days before Kayla's birth.

{¶ 3}  The court awarded emergency temporary custody of Kayla to the Agency on September 19, 2022.  Under the Agency's protective supervision, Kayla was then placed with Mother at Sojourners, a facility where Mother was receiving substance abuse and mental health services.  However, according to the Agency caseworker, Mother was soon asked to leave Sojourners because she did not listen to the advice of staff, left Kayla in her crib while Mother went to smoke, and Mother would leave items in Kayla's crib.  On October 20, 2022, the Agency received temporary custody of Kayla.  On December 19, 2022, the court found Kayla to be an abused and dependent child.

{¶ 4}  A case plan was developed for both Mother and Kayla's father ("Father") with the goal of returning Kayla to their care.  Mother was to complete substance abuse and mental health programs as well as receive a psychological evaluation.  However, Mother did not participate in these programs despite the Agency offering her transportation and financial assistance to do so.  While Mother did attend some parenting classes, she did not complete the program.

---

1.  "Kayla" is a pseudonym adopted for this opinion for the purposes of privacy and readability.  *In re D.P.* 12th Dist. Clermont Nos. CA2022-08-043 and CA2022-08-044, 2022-Ohio-4553, ¶ 1, fn. 1.

{¶ 5} Meanwhile, Mother continued to exhibit concerning behavior and circumstances. For example, Mother reported various mental health disorders to the Agency caseworker, including borderline personality disorder, post-traumatic stress disorder, anxiety, depression, and suicidal thoughts. Again, however, Mother did not complete a psychological evaluation, and the record is bare as to what, if any, other steps Mother may have taken to address her mental health.

{¶ 6} In addition, although Mother's drug screens with the Agency since May of 2023 were negative,[2] both Mother and a second child she gave birth to in July of 2023 were tested by hospital staff at the time of that child's birth and were positive for methamphetamines.

{¶ 7} During the custody proceedings, Mother's housing situation appeared transient. Kayla's Court Appointed Special Advocate ("CASA") reported Mother as being homeless and without a driver's license or transportation. Mother refused assistance to seek better housing, and the Agency caseworker struggled to meet with Mother regularly as a result.

{¶ 8} Mother did at times visit with Kayla while Kayla was in the Agency's custody. However, in the three months leading up to the permanent custody hearing, she attended 14 visits while missing nine visits. The Agency caseworker believed Mother and Kayla lacked a bond to each other because during those visits she did attend, Mother focused on her newborn to the exclusion of Kayla despite being encouraged to also pay attention to Kayla. Mother also did not attend Kayla's annual review hearing or the pretrial hearing on the Agency's motion for permanent custody. (That motion is discussed further below.)

---

2. The Agency caseworker who testified at the permanent custody hearing had worked on Kayla's case since May of 2023, the same time from which Mother argues she has not tested positive for illegal drugs. It is unclear from Mother's argument and the Agency caseworker's testimony if Mother had failed any Agency drug screens prior to May of 2023. Regardless, it does not change our analysis.

**{¶ 9}** Father similarly did not engage with recommended programs. On multiple occasions, he stated that it was in Kayla's best interest to remain in the Agency's custody.

**{¶ 10}** The Agency attempted to find other family to place Kayla with, but no suitable or willing options were identified. Kayla and Mother's other child were placed with the same foster home. Under the care of her foster parents, Kayla has reached her developmental milestones. The Agency caseworker described the environment as "loving and comforting" and noted that Kayla, who is unable to speak at her age, "reaches out" for her caregivers and the other children living at the home. Kayla's foster parents are interested in adopting her.

**{¶ 11}** The Agency moved for permanent custody on July 27, 2023. Kayla's CASA supported the Agency's motion. The court held a permanent custody hearing on October 10, 2023. On January 17, 2024,[3] the juvenile court granted the Agency's motion. The court found Mother demonstrated "a lack of commitment * * * to remedy[ing] the situation that led to [Kayla's] removal." The court also found that Kayla could not be placed with Mother within a reasonable period of time and that it was in Kayla's best interest to be placed in the permanent custody of the Agency. Mother now appeals that order.[4]

## II. Legal Analysis

**{¶ 12}** Mother's sole assignment of error states:

> THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO PREBLE COUNTY CHILDREN'S SERVICES BECAUSE ADDITIONAL TIME COULD HAVE ALLOWED MOTHER TO ADDRESS THE AGENCY'S SUSBSTANCE ABUSE CONCERNS.

---

3. The court's order is dated January 5, 2024. However, it was not filed until January 17, 2024. The record is unclear as to the reason for this delay or discrepancy, but it makes no difference to our analysis.

4. Father did not appeal the juvenile court's decision and is not a party to this appeal. We therefore do not analyze the juvenile court's decision with respect to his loss of custody. However, we note again that Father informed the Agency that he believed it was in Kayla's best interest to remain in the Agency's custody.

{¶ 13} On appeal, Mother argues she "made progress on her case plan" but that she was not given enough time to make substantial progress before the court granted permanent custody to the Agency. Specifically, she observes the Agency moved for permanent custody less than one year after Kayla's birth when many permanent custody cases are decided around two years after a child has been removed from parental custody. Mother also stresses she has had no positive drug tests since May of 2023 and would have engaged in further parenting classes if not for financial difficulties and the desire to visit Kayla more often.

{¶ 14} Mother does not specifically challenge any of the juvenile court's factual findings. Nor does Mother explicitly challenge any of the court's findings with respect to the application of the relevant statutory provisions discussed below. This includes a failure to challenge the juvenile court's findings with respect to the two prongs of the R.C. 2151.414(B)(1) permanent custody test. Nonetheless, because Mother touches on some of the concepts relevant to that test, we will review the juvenile court's application of the permanent custody test and analyze Mother's arguments where they appear relevant.

**A. Applicable Law and Standards of Review**

{¶ 15} "Before a natural parent's constitutionally protected liberty interest in the care and custody of [her] child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met." *In re M.G.*, 12th Dist. Brown No. CA2022-11-010, 2023-Ohio-1316, ¶ 44; R.C. 2151.414(E). Under R.C. 2151.414(B)(1), the juvenile court may terminate parental rights and award permanent custody of a child to a children services agency if the court makes findings pursuant to a two-part test. *In re K.P.*, 12th Dist. Preble No. CA2021-11-016, 2022-Ohio-1347, ¶ 17. First, R.C. 2151.414(B)(1) provides that the juvenile court must find that the grant of permanent custody to the agency is in the "best interest" of the child.

*In re M.H.*, 12th Dist. Clermont Nos. CA2021-08-047 thru CA2021-08-049, 2022-Ohio-48, ¶ 35. Second, the juvenile court must find that one of the circumstances set forth in R.C. 2151.414(B)(1)(a) to (e) apply. *In re R.B.*, 12th Dist. Butler Nos. CA2022-01-003 and CA2022-01-004, 2022-Ohio-1705, ¶ 31. Those circumstances are (1) the child is abandoned, R.C. 2151.414(B)(1)(b); (2) the child is orphaned, R.C. 2151.414(B)(1)(c); (3) the child has been in the temporary custody of one or more public children services agencies for 12 or more months of a consecutive 22-month period, R.C. 2151.414(B)(1)(d); (4) the child has been removed from the parents' custody or been adjudicated as abused, neglected, or dependent on three separate occasions, R.C. 2151.414(B)(1)(e); and (5) the circumstances described in R.C. 2151.414(B)(1)(b), (c), (d), and (e) do not apply, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the parents, R.C. 2151.414(B)(1)(a). Only one of these circumstances need apply to satisfy the second prong of the two-part permanent custody test. *In re C.S.*, 12th Dist. Clinton No. CA2020-04-006, 2020-Ohio-4414, ¶ 16.

{¶ 16} "An appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination." *In re A.S.*, 12th Dist. Butler Nos. CA2019-05-071 thru CA2019-05-073, 2019-Ohio-4127, ¶ 19. However, "[e]ven if there is sufficient evidence to support the juvenile court's decision, an appellate court may nevertheless reverse a permanent custody judgment if it finds the judgment to be against the manifest weight of the evidence." *In re G.A.*, 12th Dist. Clermont No. CA2022-11-079, 2023-Ohio-643, ¶ 18, citing *In re F.S.*, 12th Dist. Fayette Nos. CA2020-08-011 and CA2020-08-012, 2021-Ohio-345, ¶ 61. In determining whether a juvenile court's judgment is against the manifest weight of the evidence, an appellate court "'weighs the

evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *In re S.M.*, 12th Dist. Warren Nos. CA2018-08-088 thru CA2018-08-091 and CA2018-08-095 thru CA2018-08-097, 2019-Ohio-198, ¶ 16, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. The presumption in weighing the evidence favors the finder of fact, which we are especially mindful of in custody cases. *In re R.K.*, 12th Dist. Warren Nos. CA2021-03-027 and CA2021-03-028, 2021-Ohio-3074, ¶ 15. Therefore, if the evidence is susceptible to more than one construction, the reviewing court is bound to give it the interpretation that is consistent with the verdict and judgment. *In re D.S.*, 12th Dist. Clinton Nos. CA2021-10-030 and CA2021-10-031, 2022-Ohio-998, ¶ 63.

## B. First Part of the Permanent Custody Test: Best Interest Analysis

{¶ 17} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing, a juvenile court must consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without

- 7 -

a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

A juvenile court may also consider any other factors it deems relevant to the child's best interest. *In re A.J.*, 12th Dist. Clermont No. CA2018-08-063, 2019-Ohio-593, ¶ 24.

{¶ 18} Based upon its consideration of the R.C. 2151.414 factors, the juvenile court found by clear and convincing evidence that it was in the best interest of Kayla to grant permanent custody to the Agency. We agree.

{¶ 19} As to the first best interest factor—that is, the interaction and interrelationship of the child with her parents, foster caregivers, and others, R.C. 2151.414(D)(1)(a)—the evidence demonstrates that Mother has spent very little time with Kayla during her young life. While Mother did sometimes visit Kayla while she was in the Agency's custody, she missed nine of 23 visits in the span of three months. During the visits Mother attended, she paid little attention to Kayla. These circumstances led the Agency to believe that Mother and Kayla did not share a parental bond.

{¶ 20} On the other hand, Kayla's foster home was described as a "loving and comforting" environment, and Kayla "reaches out" in a sign of affection to her foster parents and the other children in the home. Kayla's foster family has also expressed interest in adopting her. No other suitable or willing family options were identified as appropriate placements. According to the Agency caseworker, Father believes it is in Kayla's best interest to remain in the Agency's custody, and the Agency caseworker believes the same. The first best interest factor favors an award of permanent custody to the Agency.

{¶ 21} As to the second best interest factor—the wishes of the child, R.C. 2151.414(D)(1)(b)—Kayla was too young to express her wishes. However, Kayla's CASA

expressed in her report the opinion that permanent custody should be granted to the Agency. The second best interest factor favors an award of permanent custody to the Agency.

{¶ 22} Regarding the third best interest factor—the custodial history of the child, R.C. 2151.414(D)(1)(c)—Kayla was born on September 15, 2022, and was placed in the Agency's temporary custody a mere four days later. After spending a brief period with Mother while Mother participated in in-patient drug treatment at Sojourners, Kayla returned to the Agency's custody on October 19, 2022 and has been in the Agency's custody ever since. As a result, all but one month of Kayla's life (as of when the Agency moved for permanent custody in July of 2023) had been spent in the Agency's custody. The third best interest factor favors an award of permanent custody to the Agency.

{¶ 23} As to the fourth best interest factor—the child's need for a legally secure permanent placement, R.C. 2151.414(D)(1)(d)—the juvenile court recognized that Mother has an extensive history of mental health and drug problems. Throughout the pendency of this case, Mother either failed to participate in or failed to complete psychological evaluations, mental health and substance abuse programs, and a parenting program. Mother has also refused assistance to help her find stable housing and transportation. All of this is in spite of the fact that many programs were offered to assist Mother at no cost. Mother's inaction shows she is not able to care for Kayla in a manner that would provide a legally secure permanent placement. The fourth best interest factor favors an award of permanent custody to the Agency.

{¶ 24} As a result of the foregoing, we conclude the juvenile court did not err in finding the best interest factors weighed in favor of awarding permanent custody to the Agency. There is sufficient credible evidence to support the juvenile court's determination that awarding permanent custody of the Agency was in Kayla's best interest, and the

juvenile court's determination is not against the manifest weight of the evidence.

**C. Second Part of the Permanent Custody Test**

{¶ 25} With regard to the second part of the permanent custody test, the juvenile court found that Kayla "cannot be placed with either parent within a reasonable period of time or should not be placed with her parents * * *." As described above, that finding is one of the circumstances proscribed by statute—specifically, R.C. 2151.414(B)(1)(a)— that, if found by a juvenile court, satisfies the second part of the permanent custody test.

{¶ 26} "The parental-placement [circumstance] in R.C. 2151.414(B)(1)(a) is governed by statute." *In re J.B.*, 12th Dist. Preble No. CA2023-03-002, 2023-Ohio-2454, ¶ 20. In determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court must consider "all relevant evidence." R.C. 2151.414(E). The court must find that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents if the court determines, by clear and convincing evidence, that at least one of the numerous circumstances listed in R.C. 2151.414(E) exists. *In re J.B.* at ¶ 20.

{¶ 27} Here, in support of its R.C. 2151.414(B)(1)(a) finding, the juvenile court made three findings which directly paralleled three of the circumstances contemplated by R.C. 2141.414(E). Specifically, the juvenile court found that:

> a. Notwithstanding reasonable case planning and diligent efforts by the Agency, mother and father have failed continuously and repeatedly to substantially remedy the conditions which caused the child to be removed. They were given case plans and referrals for services and have not utilized the services and resources that were made available to them for the purpose of changing parental conduct to allow them to perform parental duties. [R.C. 2151.414(E)(1)].
>
> b. Chronic mental/emotional illness or chemical dependency of the mother makes the mother unable to provide an adequate permanent home for [Kayla] and mother has done nothing insofar as treatment, so it is unclear that such can be

- 10 -

remedied within a year.  [R.C. 2151.414(E)(2)].

    c.  The parents have demonstrated a lack of commitment toward [Kayla] by failing to regularly visit when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.  [R.C. 2151.414(E)(4)].

Only one of the above R.C. 2151.414(E) findings is necessary for the court to determine that Kayla could not be placed with Mother in a reasonable period of time under R.C. 2151.414(B)(1)(a).  *In re J.B.* at ¶ 20.

**{¶ 28}** Upon review, we conclude that the record clearly and convincingly supports the juvenile court's R.C. 2151.414(E)(1), (2), and (4) findings, as well as its R.C. 2151.414(B)(1)(a) finding.  In fact, Mother does not challenge any of these findings on appeal.

**{¶ 29}** Mother's lack of housing, financial instability, ongoing mental health issues, apparent continued drug use (as evidenced by Mother and her second child both testing positive for methamphetamines upon the child's birth), unwillingness to participate in recommended programs, and failure to attend legal proceedings regarding Kayla's custody show a resounding lack of commitment to regaining custody of Kayla.  Under these circumstances, and based on the facts in the record, there is no reason to believe that Kayla can be placed in Mother's custody in a reasonable period of time.  There is sufficient credible evidence to support the juvenile court's determination with respect to the second part of the permanent custody test, and the court's determination is not against the manifest weight of the evidence.

### D. Mother's Specific Arguments

**{¶ 30}** Instead of specifically challenging the juvenile court's findings under either prong of R.C. 2151.414(B)'s permanent custody test, Mother makes two general arguments.

{¶ 31} First, Mother argues that she "made progress on her case plan." Yet, for all of the reasons described above, Mother's progress on her case plan was minimal. Mother's main claim to progress on her case plan—that she had no positive drug tests with the Agency since May of 2023—is undermined by the fact her second child tested positive at the hospital for methamphetamines when born in July of 2023. Further, Mother's assertion of being unable to participate in parenting classes due to "financial reasons" is undermined by the fact that, again, many of the services that were offered to Mother came at no cost to her. In addition, none of Mother's arguments address concerns regarding her mental health or her ability to provide a stable, safe environment for Kayla in a reasonable period of time.

{¶ 32} Even if Mother had made substantial progress on her case plan or completed her case plan (which she did not), it is well settled that "the key concern is not whether the parent has successfully completed the case plan, but whether the parent has substantially remedied the concerns that caused the child's removal from the parent's custody." *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 24. "[A] parent's successful completion of the terms of a case plan is not dispositive on the issue of reunification, as the case plan is simply a means to a goal, but not the goal itself." *In re A.R.*, 12th Dist. Butler No. CA2015-08-143, 2016-Ohio-4919, ¶ 18. Here, Mother neither satisfied her case plan objectives nor substantially remedied the concerns that caused Kayla's removal from her care. *In re R.B.*, 12th Dist. Warren No. CA2023-03-032, 2023-Ohio-3145, ¶ 31.

{¶ 33} Second, Mother argues that she was not given enough time to make substantial progress with her case plan. While Mother is correct that many permanent custody cases are decided closer to two years after temporary custody is granted, the juvenile court was not required to wait until after that time to determine that Kayla could

not be placed with Mother within a reasonable period of time under R.C. 2151.414(B)(1)(a). Ohio law prohibits temporary custody orders from extending beyond two years from the date the complaint was filed or when a child is placed into shelter care. R.C. 2151.353(G), R.C. 2151.415(D)(4). However, "'a juvenile court is not required to prolong the custody proceedings for a parent to begin to cooperate in the case planning process.' This is especially true where the evidence introduced at the permanent custody hearing demonstrated it was in the [child's] best interest for permanent custody to be granted." *In re I.C.*, 12th Dist. Clinton No. CA2022-04-010, 2022-Ohio-3101, ¶ 53, quoting *In re May.R.*, 6th Dist. Lucas No. L-19-1030, 2019-Ohio-3601, ¶ 30.

{¶ 34} Ultimately, Mother's argument amounts to a plea for an indefinite period of time to better herself. Yet, nothing in the record inspires confidence that, even if provided more time, Mother would actually take advantage of the resources being offered to her. *See In re G.W.*, 12th Dist. Butler No. CA2019-01-003, 2019-Ohio-1586, ¶ 53; *In re A.M.L.*, 12th Dist. Butler No. CA2013-01-010, 2013-Ohio-2277, ¶ 32; *In re L.M.*, 11th Dist. Ashtabula No. 2010-A-0058, 2011-Ohio-1585, ¶ 50. As we have previously held, "A child's life is not an experiment that can be left to chance * * * 'The law does not require the court to experiment with a child's welfare to see if the child will suffer great detriment or harm.'" *In re G.W.* at ¶ 52, quoting *In re B.C.*, 12th Dist. Warren Nos. CA2018-03-024 and CA2018-03-027, 2018-Ohio-2673, ¶ 30; *In re R.S.-G.*, 4th Dist. Athens No. 15CA2, 2015-Ohio-4245, ¶ 53. The two-year deadline of R.C. 2151.353(G) and R.C. 2151.415(D)(4) is meant to provide expeditious finality to a child's custody situation and does not operate as means to delay meaningful progress with a case plan.

### E. A Note on the Record

{¶ 35} On our first review, it was concerning to us that the record in this case is quite thin when compared to most other permanent custody cases. For example, the

- 13 -

transcript of the permanent custody hearing is a mere 44 pages. Such a short transcript is surprising given that "permanent termination of parental rights has been described as the family law equivalent of the death penalty in a criminal case." *In re S.F.T.*, 12th Dist. Butler Nos. CA2010-02-043 thru CA2010-02-046, 2010-Ohio-3706, ¶ 10.

{¶ 36} However, upon our detailed review of the record, we conclude that, under the particular circumstances of this case, the relative brevity of the record is a consequence of Mother's very limited efforts to comply with her case plan. Simply put, there was not much to discuss at the permanent custody hearing because Mother's lack of progress was so apparent. As a practical matter (and without shifting the burden of proof), we also note that Mother chose not to call any witnesses or present any evidence, and this necessarily resulted in a shorter hearing. As a result, we ultimately find no issue with the succinctness of the record despite the gravity of the legal issues presented.

### III. Conclusion

{¶ 37} In conclusion, we determine the juvenile court did not err by determining that it was in Kayla's best interest to grant permanent custody to the Agency. The juvenile court's decision to grant permanent custody of Kayla to the Agency was supported by clear and convincing evidence and was not against the manifest weight of the evidence. Mother's sole assignment of error is overruled.

{¶ 38} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.