[Cite as *In re C.B.*, 2015-Ohio-3709.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | |
| C.B. | : | CASE NO. CA2015-04-033 |
| | : | O P I N I O N<br>9/14/2015 |
| | : | |
| | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2012 JC 4409

Nancy W. Miller, 2400 Clermont Center Drive, #204A, Batavia, Ohio 45103, guardian ad litem

Suellen Brafford, 285 East Main Street, Batavia, Ohio 45103, for appellant, A.L.

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee, Clermont County Children Services

Jeffrey and Debra Williams, 1309 High Street, Bellaire, Ohio 43906, pro se

Corky Barre, Jr., Roederer Correctional Complex, P.O. Box 69, LaGrange, KY 40031

**HENDRICKSON, J.**

{¶ 1} Appellant, the mother of C.B., appeals a decision of the Clermont County Court

of Common Pleas, Juvenile Division, granting permanent custody of C.B. to a children's

services agency. For the reasons stated below, we affirm the decision of the juvenile court.

{¶ 2} In May 2012, C.B. was admitted to Cincinnati Children's Hospital and diagnosed with Stage IV Neuroblastoma, a form of cancer. At the time, C.B. was three years old. On June 5, 2012, C.B. was discharged from the hospital in the custody of mother and father. Though C.B. was discharged, he remained critically ill and mother and father were given strict instructions regarding his care. The next day C.B. was readmitted to the hospital after a home health care worker had trouble contacting mother and father. Once the home health care worker made contact with mother and father, she discovered C.B. was running a fever and his feeding tube was lost. The following week father was found passed out and unresponsive in C.B.'s hospital room due to a heroin overdose. Father was banned from the hospital and was subsequently charged with criminal trespassing when he attempted to sneak into the hospital.

{¶ 3} On June 15, 2012, the Clermont County Department of Job and Family Services (agency) filed a complaint alleging C.B. was a neglected child. On the same day, C.B. was placed in the emergency custody of the agency. Thereafter, C.B. was adjudicated a neglected child and remained in the agency's temporary custody. During this time, C.B. continued to receive cancer treatment and remain in the hospital.

{¶ 4} In November 2012, mother and father were arrested and incarcerated based on allegations that they were involved in a robbery and both father and mother were subsequently convicted of this offense. Father was sentenced to a 15-year prison term and mother was sentenced to a ten-year term. While father and mother were incarcerated, C.B.'s maternal grandparents moved for legal custody. The maternal grandparents' motion was denied by the juvenile court.[1] In June 2013, C.B. was placed with foster parents and began

---

1. Grandparents appealed the denial of legal custody to this court and we dismissed the appeal for lack of jurisdiction. *In re C.B.*, 12th Dist. Clermont No. CA2013-12-094, 2014-Ohio-3784.

transitioning from staying at the hospital to living with foster parents at their home. At the time of his placement, C.B. had been hospitalized for over a year. C.B. remained with his foster family at their home until April 2014 when his cancer returned. C.B. was hospitalized for approximately a month while he received treatment.

{¶ 5} On September 15, 2014, the agency moved for permanent custody of C.B. A hearing regarding the motion was held before a magistrate on January 16, 2015. The magistrate heard testimony from several witnesses, including mother, who explained that she was granted early release from her ten-year prison sentence. Mother stated she has completed drug treatment and life skills programs, obtained her GED, and is currently staying at a residential treatment facility in northern Kentucky while she is on probation. Mother requested that C.B. be returned to her custody. After the presentation of the evidence, the magistrate issued its decision finding it was in C.B.'s best interest to grant the agency permanent custody. Mother filed objections to the magistrate's decision, which the juvenile court subsequently denied, thereby affirming and adopting the magistrate's decision in full.

{¶ 6} Mother now appeals, asserting a sole assignment of error:

{¶ 7} IN A CHILD CUSTODY CASE, THE TRIAL COURT ERRED IN ITS DECISION AND ORDER GRANTING PERMANENT CUSTODY OF THE CHILD TO THE AGENCY DESPITE THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 8} Mother argues the juvenile court's finding that it was in C.B.'s best interest to grant the agency permanent custody was against the manifest weight of the evidence.[2] Before a natural parent's constitutionally protected liberty interest in the care and custody of his or her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v.*

---

2. Father has not appealed the juvenile court's decision granting permanent custody of C.B. to the agency.

*Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient, credible evidence exists to support the juvenile court's determination. *In re S.H.*, 12th Dist. Butler Nos. CA2014-12-259 and CA2015-01-008, 2015-Ohio-1763, ¶ 11. Thus, a reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *In re S.U.*, 12th Dist. Clermont No. CA2014-07-055, 2014-Ohio-5748, ¶ 10. Clear and convincing evidence is "'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 9} Even if a trial court's judgment is sustained by sufficient evidence, an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence. *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 9. In determining whether a decision is against the manifest weight of the evidence, an appellate court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. The presumption in weighing the evidence is in favor of the finder of fact, which we are especially mindful of in custody cases. *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231 and CA2014-11-236 thru CA2014-11-238, 2015-Ohio-1343, ¶ 25. "If the evidence is susceptible to more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining

the verdict and judgment." *Eastley* at ¶ 21.

{¶ 10} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. Initially, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors provided under R.C. 2151.414(D). *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Next, the court must find that any of the following apply: 1.) the child is abandoned; 2.) the child is orphaned; 3.) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; 4.) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or 5.) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a)-(e). Only one of those findings must be met for the second prong of the permanent custody test to be satisfied. *In re T.D.*, 12th Dist. Preble No. CA2009-01-002, 2009-Ohio-4680, ¶ 15.

{¶ 11} In this case, the juvenile court found by clear and convincing evidence that C.B. had been in the temporary custody of the agency for more than 12 months of a consecutive 22-month period preceding the filing of the agency's motion for permanent custody on September 15, 2014. Mother does not dispute this finding. Rather, as noted above, mother merely disputes the juvenile court's finding that granting permanent custody of C.B. to the agency was in his best interest when considering the factors under R.C. 2151.414(D).

{¶ 12} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but

- 5 -

not limited to the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 13} With respect to R.C. 2151.414(D)(1)(a), the juvenile court found C.B. has not had a consistent relationship with any of his biological relatives and, due to C.B.'s battles with two bouts of cancer, having a strong support system is especially important to his welfare. In regards to father, the juvenile court found he has not demonstrated an interest in maintaining a relationship with C.B., due to incarceration and the denial of visitation with C.B. at the hospital after he passed out from a drug overdose. With respect to mother, the juvenile court found mother's contact with C.B. at the hospital was also terminated due to the negative impact her communications were causing the child. As to the maternal grandparents, the juvenile court found that they used to enjoy spending time with C.B. at family events and felt bonded to him, but they have not seen C.B. for over a year. Finally, the juvenile court found C.B.'s foster family has created a support system for the child as he battles cancer and the family is committed to maintaining a constant, comforting presence for C.B.

{¶ 14} In considering R.C. 2151.414(D)(1)(b), the juvenile court noted that the

guardian ad litem (GAL) recommended C.B. remain with his foster family. The juvenile court quoted from the GAL's report which stated that C.B. expressed a clear desire to remain with his foster family and he "is doing well academically and appears strongly grounded by the lively environment, loving support, and predictable rhythm of family life."

{¶ 15} As stated previously, the juvenile court found C.B. has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period which satisfies R.C. 2151.414(D)(1)(c).

{¶ 16} Regarding R.C. 2151.414(D)(1)(d), the juvenile court found C.B. is in need of a legally secure permanent placement and the only means for C.B. to obtain such a placement is for the agency to be granted permanent custody. The juvenile court noted that while mother has made improvements in her own life since she was incarcerated, she is still not in a position to provide a home for C.B. The juvenile court stated mother has time remaining to serve in the residential treatment facility, is unemployed, her relationship with C.B. is poor, and there is no indication when her relationship with the child may improve. The juvenile court noted that C.B.'s welfare depends upon stability and due to C.B.'s substantial health issues, uncertainty in regards to his future should not be prolonged. The juvenile court found that C.B.'s foster family has provided and is willing to continue to provide stability while ensuring C.B. receives all the health care and therapy he requires. Therefore, the juvenile court found it would be detrimental for C.B. to be removed from his foster family and that granting permanent custody to the agency means that C.B. can find comfort in knowing he has a permanent home. Based on consideration of the statutory factors, the juvenile court determined by clear and convincing evidence it was in the best interest of C.B. to grant permanent custody to the agency.

{¶ 17} Mother argues the juvenile court's decision is not in C.B.'s best interest. Mother maintains her relationship with C.B. suffered because the agency restricted her visits at the

hospital and eventually requested she cease all communication. However, the evidence demonstrated mother's poor relationship with C.B. was a result of her own poor decisions. Mother admitted she frequently visited C.B. at the hospital while high on heroin prior to being incarcerated. While mother has not seen C.B. since October 2012, she was imprisoned from November 2012 until December 2014. Additionally, the agency's request that mother stop calling or writing letters to C.B. in February 2013 was based on a psychologist's recommendation. An agency caseworker explained that a psychologist recommended mother stop contact because her communications caused C.B. to have "meltdowns" and C.B. "reacted negatively, crying, throwing things, becoming upset, very upset where it was difficult to calm him down."

{¶ 18} Mother also challenges the juvenile court's reliance on C.B.'s desire to remain with his foster family in its decision. Mother asserts that due to C.B.'s young age, the juvenile court gave too much weight to C.B.'s wishes. While the juvenile court did consider C.B.'s wishes, this was one factor among a number of best interest factors in the juvenile court's decision. Additionally, the GAL recommended that permanent custody be granted to the agency and C.B. remain with his foster family.

{¶ 19} Lastly, mother maintains that the juvenile court's decision diminished the substantial gains she has made in her life. Mother points to the fact that she was granted early release from her ten-year prison sentence because she completed several job and life skill programs, received her GED, and became a GED tutor for other inmates. Mother also testified that she no longer uses heroin, attends AA, and receives drug treatment and other life skill lessons at the residential treatment facility where she resides. While we commend mother for the progress she has made in her life, at the time of the permanent custody hearing, mother did not have a permanent home or a job and would not be able to obtain a job or live outside the residential treatment facility for several months. In light of C.B.'s

serious health concerns (which require regular administration of chemotherapy drugs, a vigilant watch over his health and possible relapses, and transportation to and from several medical appointments a month), the juvenile court's decision to grant permanent custody to the agency was in C.B.'s best interest. *See In re E.G.*, 12th Dist. Butler No. CA2013-12-224, 2014-Ohio-2007, ¶ 25-27 (best interest includes consideration of child's special needs); *In re G.K.*, 12th Dist. Preble Nos. CA2015-01-006 and CA2015-02-007, 2015-Ohio-2581, ¶ 40-41.

{¶ 20} In light of the forgoing, and after carefully reviewing the record, the juvenile court's findings are supported by sufficient, credible evidence and are otherwise not against the manifest weight of the evidence. The evidence established that C.B.'s well-being depends on being in a loving stable home with caregivers who vigilantly monitor his health and that C.B.'s foster family provides C.B. with this environment. The juvenile court properly considered the appropriate factors under R.C. 2151.414(D) and acted in C.B.'s best interest by granting permanent custody to the agency. After weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we find there was no manifest miscarriage of justice in the juvenile court's decision.

{¶ 21} Accordingly, the juvenile court's decision granting permanent custody of C.B. to the agency was not against the manifest weight of the evidence and was supported by sufficient, credible evidence. Mother's sole assignment of error is overruled.

{¶ 22} Judgment affirmed.

PIPER, P.J., and S. POWELL, J., concur.

- 9 -