[Cite as *In re J.E.*, 2023-Ohio-3827.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

|                |   |                            |
|----------------|---|----------------------------|
| IN RE:         | : |                            |
| J.E., JR.      | : | CASE NO. CA2023-08-013     |
|                | : | O P I N I O N<br>10/23/2023 |
|                | : |                            |
|                | : |                            |
|                | : |                            |

APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. AND20220178

Jess C. Weade, Fayette County Prosecuting Attorney, and Rachel S. Martin, Assistant Prosecuting Attorney, for appellee.

Steven H. Eckstein, for appellant.

K. Danielle Whitt, for mother.

Susan R. Wollscheid, guardian ad litem.

**S. POWELL, P.J.**

{¶ 1} Appellant ("Father") appeals the decision of the Fayette County Court of Common Pleas, Juvenile Division, granting permanent custody of his son, J.E., Jr., to

appellee, Fayette County Children Services ("FCCS").[1]  For the reasons outlined below, we affirm the juvenile court's decision.

**Facts and Procedural History**

{¶ 2}   On May 18, 2022, FCCS filed a complaint alleging the then six-year-old J.E., born August, 16, 2015, was an abused and dependent child.  FCCS filed this complaint after it received evidence that Father had beaten J.E. on the back with a belt.  This evidence included an audio recording of Father beating J.E. – a recording in which J.E. can be heard screaming – and a photograph depicting the resulting welts on J.E.'s back.

{¶ 3}   Upon receiving this evidence, FCCS contacted local police to conduct a wellness check on J.E.  During this wellness check, J.E. provided the responding officers with the belt that Father had used to beat him.  Father was subsequently arrested, charged, and, due to Father having a prior child abuse conviction, convicted of fourth-degree felony child endangerment for which he was sentenced to 12 months in the Fayette County Jail.[2]

{¶ 4}   On August 10, 2022, the juvenile court adjudicated J.E. an abused child.  The juvenile court also issued a dispositional decision granting temporary custody of J.E. to FCCS.  The juvenile court's adjudicatory and dispositional decisions were based on Father's stipulations that: (1) there was sufficient evidence for an abuse finding; and (2), despite FCCS' reasonable efforts to eliminate J.E.'s removal, it was nevertheless in J.E.'s best interest to grant temporary custody to FCCS.

{¶ 5}   On January 9, 2023, FCCS moved for permanent custody of J.E.  To support

1. J.E.'s mother is not a party to this appeal and, for purposes of this opinion, will not be discussed further except to note that she had previously lost custody of J.E. in December of 2020.  It was at this time that a judicial decision from a different Ohio county placed J.E. in the custody and care of Father.

2. Father was initially charged with, and pled guilty to, both fourth-degree felony child endangerment and first-degree misdemeanor domestic violence.  However, at Father's sentencing hearing, the trial court merged the two offenses as allied offenses of similar import.  The state then elected to proceed with sentencing Father on the child endangerment charge.

this motion, FCCS argued that it should be awarded permanent custody of J.E. "based on the fact that the child has been abandoned, and that it is in the best interest of the minor child that permanent custody be granted" to FCCS. The juvenile court held a hearing on FCCS' permanent custody motion on March 31, 2023. Father, still incarcerated as a result of his conviction for fourth-degree felony child endangerment, was transported from the Fayette County Jail to attend this hearing.

{¶ 6} During the permanent custody hearing, the juvenile court heard testimony from just two witnesses: the caseworker assigned to J.E.'s case and Father. The juvenile court also received a report from J.E.'s guardian ad litem that included the following recommendation:

> I believe it to be in the best interest of [J.E.] to grant the motion for Permanent Custody to Fayette County Children Services at this time. Neither parent has shown a willingness or ability to provide proper and adequate care for the minor child. It is unlikely that either parent would be able to make sufficient progress on the case plan in order to correct the issues that cause[d] the initial removal in a timely manner. It is the opinion of this GAL that this child cannot be safely placed back with either parent within a reasonable time and that these parents have essentially abandoned this child. [J.E.] is in need of a legally secure placement and appropriate supervision and care. I believe the only option to achieve those goals at this time [is] to grant the motion for permanent custody to the Fayette County Children Services agency.

{¶ 7} On July 26, 2023, the juvenile court issued a decision granting permanent custody of J.E. to FCCS. In so holding, the juvenile court determined that Father had abandoned J.E. given that Father last had contact with J.E. on May 18, 2022. This was the same day that Father was arrested for beating J.E. with the belt. The juvenile court also found Father had not "made any attempts to contact the child via letter, phone or requests for visits through the agency since the child's removal on May 18, 2022." The juvenile court further determined that it was in J.E.'s best interest to grant permanent custody to FCCS.

- 3 -

{¶ 8} In reaching this decision, the juvenile court determined that Father had made "dismal progress" on his case plan, which Father had only begun working on while incarcerated approximately two months prior to the hearing on FCCS' permanent custody motion. The juvenile court also found the interrelationship between Father and J.E. was "non-existent" and that there existed a "lack of parental bond" between Father and J.E. The juvenile court further found that, since Father's arrest on May 18, 2022, J.E. had not had any contact with Father, nor had Father made any attempts to contact J.E. including no efforts to either telephone or write to J.E.

**Father's Appeal and Single Assignment of Error for Review**

{¶ 9} On August 2, 2023, Father filed a notice of appeal from the juvenile court's decision granting FCCS' motion for permanent custody. Father's appeal now properly before this court for decision, Father has raised one assignment of error for review. In his single assignment of error, Father argues the juvenile court erred by granting permanent custody to FCCS. To support this argument, Father claims the juvenile court incorrectly determined that FCCS had proved, by clear and convincing evidence, that it was in J.E.'s best interest to grant FCCS permanent custody. Although not explicit, Father's argument is essentially a challenge to the sufficiency and manifest weight of the evidence supporting the juvenile court's permanent custody decision. We find no merit to this challenge.

*Sufficiency and Manifest Weight of the Evidence Standards*

{¶ 10} "An appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination." *In re D.P.*, 12th Dist. Butler No. CA2020-07-074, 2020-Ohio-6663, ¶ 13. "That is to say, the juvenile court's decision to grant permanent custody must be supported by sufficient evidence." *In re P.E.*, 12th Dist. Clermont No. CA2023-04-021, 2023-Ohio-2438, ¶ 14. Sufficiency of the evidence is a test of adequacy.

*In re L.C.*, 5th Dist. Stark 2023CA0043, 2023-Ohio-2989, ¶ 16. "[W]hether the evidence is sufficient to sustain the judgment is a question of law." *In re Z.J.*, 1st Dist. Hamilton No. C-220627, 2023-Ohio-1347, ¶ 27. "However, even if the juvenile court's decision is supported by sufficient evidence, 'an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence.'" *In re C.S.*, 12th Dist. Clinton No. CA2020-04-006, 2020-Ohio-4414, ¶ 15, quoting *In re T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 19.

{¶ 11} In determining whether a juvenile court's permanent custody decision is against the manifest weight of the evidence, this court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *In re S.M.*, 12th Dist. Warren Nos. CA2018-08-088 thru CA2018-08-091 and CA2018-08-095 thru CA2018-08-097, 2019-Ohio-198, ¶ 16, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. "In weighing the evidence, there is a presumption in favor of the findings made by the finder of fact and evidence susceptible to more than one construction will be construed to sustain the verdict and judgment." *In re M.A.*, 12th Dist. Butler No. CA2019-08-129, 2019-Ohio-5367, ¶ 15. "We are especially mindful of this in permanent custody cases." *In re M.G.*, 12th Dist. Warren No. CA2020-10-070, 2021-Ohio-1000, ¶ 26.

*R.C. 2151.414(B)(1) and the Applicable Two-Part Permanent Custody Test*

{¶ 12} The state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met before a natural parent's constitutionally protected liberty interest in the care and custody of his child may be terminated. *In re R.K.*, 12th Dist. Warren Nos. CA2021-03-027 and CA2021-03-028, 2021-

Ohio-3074, ¶ 14, citing *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). In Ohio, it is R.C. 2151.414(B)(1) that sets forth the applicable two-part permanent custody test. *In re M.H.*, 12th Dist. Clermont Nos. CA2021-08-050 thru CA2021-08-052, 2022-Ohio-49, ¶ 30. One part of that two-part test requires the juvenile court to find any one of the circumstances set forth in R.C. 2151.414(B)(1)(a) to (e) applies. *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. This includes a circumstance where the child has been abandoned. *In re S.S.*, 12th Dist. Clermont No. CA2023-04-020, 2023-Ohio-2916, ¶ 16, citing R.C. 2151.414(B)(1)(b). A child shall be presumed abandoned when the child's parents have "failed to visit or maintain contact with the child" for more than 90 days. R.C. 2151.011(C). *Id.* This holds true "regardless of whether the parents resume contact with the child" after that 90-day period ends. *Id.*

{¶ 13} The other part of that two-part test requires the juvenile court to find the grant of permanent custody be in the child's best interest. *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. This is generally done by utilizing the best-interest factors set forth in R.C. 2151.414(D)(1). *In re S.W.*, 12th Dist. Preble Nos. CA2022-08-013 and CA2022-08-014, 2023-Ohio-118, ¶ 19. These factors include, but are not limited to: (1) the interaction and interrelationship of the child with the child's parents; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement. R.C. 2151.414(D)(1)(a)-(d). These factors also include whether any of the factors listed in R.C. 2151.414(E)(7) to (11) apply. *In re G.A.*, 12th Dist. Clermont No. CA2022-11-079, 2023-Ohio-643, ¶ 41, citing R.C. 2151.414(D)(1)(e). One of those factors, R.C. 2151.414(E)(7), involves a parent having been convicted or pled guilty to specific criminal offenses against the child. *In re B.M.*, 12th Dist. Clinton Nos. CA2022-11-028 and CA2022-11-029, 2023-Ohio-1112, ¶ 56. Another of those factors, R.C. 2151.414(E)(10),

applies when the parent has abandoned the child. *See, e.g., In re D.P.*, 12th Dist. Clermont Nos. CA2022-08-043 and CA2022-08-044, 2022-Ohio-4553, ¶ 41 (finding a father had abandoned his twin boys while he was in prison for over a year, "during which he had no contact with the twins," thus constituting abandonment under R.C. 2151.414[E][10]).

*Father's Argument and Analysis*

{¶ 14} Father does not dispute the juvenile court's finding he had abandoned J.E. while he was incarcerated in the Fayette County Jail following his conviction of child endangerment. Father only disputes the juvenile court's decision finding a grant of permanent custody to FCCS was in J.E.'s best interest. Father supports this claim by arguing that, because the juvenile court's decision was "based upon such conflicting evidence," the juvenile court's decision finding it was in J.E.'s best interest to grant permanent custody to FCCS was not "based upon clear and convincing evidence." This is because, according to Father, though there was some "testimony in support of the grant of permanent custody," there was also "significant testimony, contra, to a grant of permanent [custody] to FCCS." So much testimony, in fact, that Father claims "the contra testimony clearly outweighs the testimony in support" of granting FCCS' motion.

{¶ 15} However, upon a thorough review of the record, this court disagrees with Father's claim. This court instead finds there to be overwhelming competent and credible evidence in the record to support the juvenile court's decision. This includes, but is not limited to, the evidence in the record supporting the juvenile court's finding Father had made "dismal progress" on his case plan, something which the record indicates Father only began working on approximately two months prior to the permanent custody hearing. This also includes the evidence in the record supporting the juvenile court's finding that the interrelationship between Father and J.E. was "non-existent" and that there existed a "lack of parental bond" between Father and J.E. This is in addition to the evidence in the record

- 7 -

supporting the juvenile court's finding that J.E. had been in the temporary custody of FCCS since Father's arrest on May 18, 2022, during which time J.E. did not have any contact with Father, nor did Father make any attempts to contact J.E. by phone or letter. The record instead supports the juvenile court finding that Father had never even asked FCCS if it was possible for J.E. to visit him during the 12 months that he was incarcerated at the Fayette County Jail.

{¶ 16} These findings, coupled with the evidence in the record that showed J.E. had been receiving weekly counseling sessions while in the temporary custody of FCCS, had been taking the necessary medication to address his ADHD, and appeared happy and doing well in his current foster-to-adopt home, convinces this court that the juvenile court did not err in its decision finding a grant of permanent custody to FCCS was in J.E.'s best interest. This is because, contrary to Father's claim, the juvenile court's best interest determination was both supported by sufficient evidence and was not against the manifest weight of the evidence. Father's argument otherwise lacks merit. This is particularly true in this case when considering both that (1) J.E.'s guardian ad litem recommended the juvenile court grant FCCS' permanent custody motion, and (2) there was no other appropriate relative placement available for J.E. Therefore, finding no merit to any of the arguments raised by Father herein, Father's single assignment of error lacks merit and is overruled.

## Conclusion

{¶ 17} For the reasons outlined above, and having now overruled Father's single assignment of error, Father's appeal from the juvenile court's decision granting permanent custody of his son, J.E., to FCCS is denied.

**{¶ 18}** Judgment affirmed.

PIPER and M. POWELL, JJ., concur.