[Cite as *In re J.K.*, 2025-Ohio-3190.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| | | CASE NO. CA2025-04-028 |
| J.K., et al. | : | |
| | | <u>OPINION AND</u> |
| | : | <u>JUDGMENT ENTRY</u> |
| | | 9/8/2025 |
| | : | |
| | : | |
| | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. 23-D000023, 23-D000024

Andrew J. Brenner, for appellant.

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Marcelina C. Woods, Guardian Ad Litem.

## **O P I N I O N**

**PIPER, J.**

{¶ 1} Appellant ("Father") appeals the decision of the Warren County Court of Common Pleas, Juvenile Division, granting permanent custody of two of his children to

appellee, Warren County Children Services ("WCCS").[1] For the reasons outlined below, we affirm the juvenile court's decision.

**Facts and Procedural History**

{¶ 2}  The children at issue in this case, both of whom have special needs and limited communicative abilities, were born on December 31, 2007, and January 14, 2009, respectively. One child has a chromosomal disorder, whereas the other is non-verbal autistic. Both children have significant cognitive delays for which they receive specialized assistance from an intervention specialist while attending school.

{¶ 3}  On February 21, 2023, WCCS filed complaints alleging the children were either dependent or abused and dependent. The complaints were filed based on WCCS' concerns regarding ongoing physical abuse of the children taking place in the home where they resided with Father.[2] These concerns were substantiated by a photograph of one of the children's arms containing extensive bruising. These bruises were determined by experts to be non-accidental and inconsistent with Father's claim that the bruising was the result of the child falling from his bunk bed.

{¶ 4}  On July 3, 2023, the juvenile court adjudicated the children as dependent or abused and dependent. This adjudication included the juvenile court finding the evidence of physical abuse to be "overwhelming." Shortly thereafter, on July 6, 2023, the juvenile court issued a dispositional decision that granted temporary custody of the children to WCCS. The children have remained in WCCS's custody ever since. This has

1. The record indicates that Father has been diagnosed with gender dysphoria and considers himself to be a woman with a name commonly associated with women. For purposes of readability, however, and to avoid confusion, we will refer to Father with the pronouns associated with his sex at birth.

2. Also residing in the home with Father was the children's stepmother and their two younger half-siblings. This opinion does not address any happenings as it relates to the children's two younger half-siblings.

resulted in the children being placed in a group home where their special needs can be properly attended to. This has also resulted in Father pleading guilty to a charge of child endangerment for which he was sentenced to serve time in the county jail.

{¶ 5} On June 25, 2024, approximately four months after Father was released from jail, WCCS filed motions for permanent custody of the children. Several months later, on October 31, 2024, the juvenile court began what ultimately turned into in a three-day permanent custody hearing.[3] During this hearing, the juvenile court heard testimony and accepted evidence from several witnesses. These witnesses included an intervention specialist from the children's school, the caseworker assigned to the children's case, and Father. The juvenile court also conducted an in-camera interview with the children and their guardian ad litem. This interview resulted in the more verbal of the two children repeatedly telling the juvenile court judge that Father was "mean," that the child did not feel safe in Father's care, and that the child had no desire to visit with Father, let alone live with Father. The child also advised the juvenile court judge that Father still "hits" or "smacks" both children and that the only reason the child would want to see Father was to tell him to "stop."

{¶ 6} On March 18, 2025, over two years after WCCS had filed its initial complaints regarding the children, the juvenile court issued a decision granting permanent custody of the children to WCCS. In so doing, the juvenile court determined that it was in the children's best interest to grant permanent custody to WCCS when considering "the evidence clearly and convincingly shows that the problems that led to the [c]hildren's

---

3. The hearing held on WCCS' motion for permanent custody was continued to February 19, 2025, and thereafter concluded on March 17, 2025.

removal have not been substantially remedied by either Mother or Father."[4] This included, most notably, Father's alleged continued and ongoing physical abuse of the children. Father filed a notice of appeal from the juvenile court's decision on April 16, 2025. Father's appeal was submitted to this court for consideration on August 25, 2025. Father's appeal now properly before this court for decision, Father has raised one assignment of error for review.

**Father's Single Assignment of Error**

{¶ 7}   THE TRIAL COURT ERRED IN FINDING, BY CLEAR AND CONVINCING EVIDENCE, THAT GRANTING PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN, PURSUANT TO THE FACTORS SET FORTH IN [R.C.] 2151.414(D).

{¶ 8}   In his single assignment of error, Father argues the juvenile court erred by finding it was in the children's best interests to grant permanent custody of the children to WCCS. To support this claim, Father argues the juvenile court's decision to grant permanent custody to WCCS was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

**Sufficiency and Manifest Weight of the Evidence Standards**

{¶ 9}   "An appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination." *In re D.P.*, 2020-Ohio-6663, ¶ 13 (12th Dist.). "That is to say, the juvenile court's decision to grant permanent custody must be supported by sufficient evidence." *In re P.E.*, 2023-Ohio-2438, ¶ 14 (12th Dist.).

---

4. The children's biological mother is not a party to this appeal and has been found to have abandoned the children based upon her having had no contact with the children for several years.

- 4 -

Sufficiency of the evidence tests the burden of production. *In re J.E.*, 2023-Ohio-3827, ¶ 10 (12th Dist.), citing *In re L.C.*, 2023-Ohio-2989, ¶ 16 (5th Dist.). "'[W]hether the evidence is sufficient to sustain the judgment is a question of law.'" *In re A.V.*, 2024-Ohio-1091, ¶ 31 (12th Dist.), quoting *In re Z.J.*, 2023-Ohio-1347, ¶ 27 (1st Dist.). "Questions of law, even in permanent custody cases, are reviewed by this court de novo." *In re N.G.*, 2024-Ohio-31, ¶ 15 (12th Dist.). "In conducting a de novo review, this court independently reviews the record without giving deference to the juvenile court's decision." *In re A.V.*, citing *In re S.C.R.*, 2018-Ohio-4063, ¶ 13 (12th Dist.). "However, even if the juvenile court's decision is supported by sufficient evidence, 'an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence.'" *In re C.S.*, 2020-Ohio-4414, ¶ 15 (12th Dist.), quoting *In re T.P.*, 2016-Ohio-72, ¶ 19 (12th Dist.).

{¶ 10} Unlike a challenge to the sufficiency of the evidence, "'[m]anifest weight tests the burden of persuasion, not the burden of production.'" *In re N.G.* at ¶ 16, quoting *Magnum Steel & Trading, LLC v. Mink*, 2013-Ohio-2431, ¶ 31 (9th Dist.). In determining whether a juvenile court's permanent custody decision is against the manifest weight of the evidence, this court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *In re S.M.*, 2019-Ohio-198, ¶ 16 (12th Dist.), quoting *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. "In weighing the evidence, there is a presumption in favor of the findings made by the finder of fact and evidence susceptible to more than one construction will be construed to sustain the verdict and judgment." *In re M.A.*, 2019-Ohio-5367, ¶ 15 (12th Dist.). "We are especially

mindful of this in permanent custody cases." *In re M.G.*, 2021-Ohio-1000, ¶ 26 (12th Dist.). "This is because, as it is now well established, 'the demeanor and attitude of the witnesses may not translate into the record.'" *In re A.V.* at ¶ 32, quoting *C.A. v. H.S.*, 2020-Ohio-4352, ¶ 16 (12th Dist.).

**Two-Part Permanent Custody Test**

{¶ 11} The State is required to prove by clear and convincing evidence that the statutory standard for permanent custody has been met before a parent's constitutionally protected liberty interest in the care and custody of their children may be terminated. *In re R.K.*, 2021-Ohio-3074, ¶ 14 (12th Dist.), citing *Santosky v. Kramer*, 455 U.S. 745, 759 (1982). For this case, it is R.C. 2151.414(B)(1) that sets forth the applicable statutory standard. *In re M.H.*, 2022-Ohio-49, ¶ 30 (12th Dist.). That statute provides a two-part permanent custody test to be applied to the case at bar. *In re D.D.*, 2024-Ohio-5858, at ¶ 22 (12th Dist.). One part of that two-part permanent custody test, the part that is in dispute, requires the juvenile court to find the grant of permanent custody to be in the children's best interest.[5] *In re D.K.W.*, 2014-Ohio-2896, ¶ 21 (12th Dist.). This is generally done by utilizing the best-interest factors set forth in R.C. 2151.414(D)(1). *In re S.W.*, 2023-Ohio-118, ¶ 19 (12th Dist.). These factors include but are not limited to: (1) the interaction and interrelationship of the children with their parents; (2) the wishes of the children; (3) the custodial history of the children; and (4) the children's need for a legally secure permanent

---

5. The other part of that two-part test requires the juvenile court to find that any one of the circumstances set forth in R.C. 2151.414(B)(1)(a) through (e) applies. *In re C.B.*, 2015-Ohio-3709, ¶ 10 (12th Dist.). "This includes a circumstance, often referred to as the '12 of 22' provision, where the subject child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period." *In re A.D.*, 2022-Ohio-736, ¶ 20 (12th Dist.), citing R.C. 2151.414(B)(1)(d). Father does not dispute that the children were in the temporary custody of WCCS for at least 12 months of a consecutive 22-month period prior to WCCS filing its motions for permanent custody. Therefore, for purposes of this opinion, we will focus our attention on what is in dispute. That being, whether it was in the children's best interest for the juvenile court to grant permanent custody of the children to WCCS.

placement. R.C. 2151.414(D)(1)(a)-(d). These factors also include whether any of the circumstances listed in R.C. 2151.414(E)(7) through (11) apply. R.C. 2151.414(D)(1)(e).

**Father's Arguments and Analysis**

{¶ 12} The juvenile court considered the best interest factors set forth above when determining that it was in the children's best interest to grant permanent custody of the children to WCCS. Father does not dispute this. Nor does Father dispute any of the factual findings that the juvenile court made with respect to those best interest factors. This includes the juvenile court's finding "[t]he behaviors by Father which led to the case being filed in the first place have not been remedied by the simple fact that the [c]hildren are still being 'hit' or 'smacked,' they don't feel safe with [Father] and they have no desire to reunify with Father." This also includes the juvenile court's finding the children to be "safe in their current group home and appear to be thriving," that the children's "educational needs" were being "met and exceeded by the intervention specialists at their school," and that the children "appear to be happy and content" with their current living situation.

{¶ 13} Rather than objecting to the juvenile court's factual findings, Father merely challenges the juvenile court's decision to grant WCCS permanent custody of the children by noting the evidence indicating his visits with the children had recently been "going well," that he had "appropriate housing and the financial means to care for the children, as well as a plan for how to meet their educational and health needs." Father has therefore requested this court to reverse the juvenile court's decision granting permanent custody of the children to WCCS and remand this matter back to the juvenile court to allow him "some additional more time" to complete "further services." Father believes that if he is provided with just "a little more time" to "become more stable" that he could provide the

legally secure permanent placement that the children need. Father's request is denied.

{¶ 14} Father's argument amounts to nothing more than a plea for this court to grant him an indefinite period of time to better himself in hopes of one day being reunited with the children. However, pursuant to R.C. 2151.353(G) and 2151.415(D)(4), "a grant of temporary custody to a children services agency is limited to a period of two years; an initial period of one year, followed by up to two six-month extensions." *In re V.G.*, 2018-Ohio-709, ¶ 29 (12th Dist.). These statutes effectively prohibit a juvenile court from extending a grant of temporary custody of a child to a children services agency beyond two years from the date the initial complaint was filed or when the child was first placed into shelter care, whichever date is earlier. *In re I.C.*, 2022-Ohio-3101, ¶ 51 (12th Dist.). This two-year deadline is meant to provide "expeditious finality" to a child's otherwise uncertain custody situation. *In re K.H.*, 2024-Ohio-2113, ¶ 34 (12th Dist.). Therefore, given that a grant of temporary custody of the children to WCCS has already reached its statutory "sunset" date, even if we were to agree that Father could benefit from receiving additional services, and that Father receiving those additional services was the only obstacle preventing his reunification with the children, which we do not, any further extension of the juvenile court's temporary custody order is not statutorily permissible under R.C. 2151.353(G) and 2151.415(D)(4). To the extent Father claims otherwise, such argument lacks merit.

{¶ 15} In reaching this decision, we note that parents are to be afforded a "reasonable, not an indefinite, period of time" to remedy the conditions that led to their children's removal from their care. *In re G.W.*, 2019-Ohio-1586, ¶ 53 (12th Dist.). Father failed to remedy those conditions despite being given over two years to do so. Father's

purported seriousness about correcting those conditions now with "some additional more time" to complete "further services" is simply too little, too late. That there was evidence to indicate Father's visits with the children had recently been "going well," that he had "appropriate housing and the financial means to care for the children, as well as a plan for how to meet their educational and health needs," does not change this fact. This is particularly true in this case when considering Father does not dispute the juvenile court's finding "[t]he behaviors by Father which led to the case being filed in the first place have not been remedied by the simple fact that the [c]hildren are still being 'hit' or 'smacked,' they don't feel safe with [Father] and they have no desire to reunify with Father." This is in addition to Father raising no objection to the juvenile court's finding the children to be "safe in their current group home and appear to be thriving," that the children's "educational needs" were being "met and exceeded by the intervention specialists at their school," and that the children "appear to be happy and content" with their current living situation.

{¶ 16} "The juvenile court, just like this court, must act in a manner that places the children's best interests above all else." *In re L.D.*, 2025-Ohio-2892, ¶ 125 (12th Dist.). "A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security." *In re D.E.*, 2018-Ohio-3341, ¶ 60 (12th Dist.). The juvenile court's decision to grant permanent custody of the children to WCCS does just that. This is because, rather than placing the children back with their physically abusive Father with whom they do not feel safe and have no desire reunify, the juvenile court's decision allows for the children to either be adopted or to remain in the group home where they had been residing for the preceding two years following their removal from Father's

care. "A child's life . . . is not something the juvenile court should take a gamble on. This holds true no matter how good the odds may seem." *In re M.G.*, 2023-Ohio-1316, ¶ 58 (12th Dist.). Therefore, finding no merit to any of the arguments raised by Father herein, Father's single assignment of error challenging the sufficiency and manifest weight of the evidence used to support the juvenile court's decision to grant WCCS permanent custody of the children is overruled.

## Conclusion

{¶ 17} For the reasons outlined above, and having now overruled Father's single assignment of error, Father's appeal from the juvenile court's decision granting permanent custody of two of his children to WCCS is denied.

{¶ 18} Judgment affirmed.

HENDRICKSON, P.J., and BYRNE, J., concur.

---

# **J U D G M E N T   E N T R Y**

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas, Juvenile Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Matthew R. Byrne, Judge

- 11 -